_____FILED _____ENTERED
_____LODGED _____RECEIVED

JUL 26 2012

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

## ATTACHMENT A:
## STIPULATED FACTS – UNITED STATES v. CHRISTOPHER WOMACK

*If this matter had proceeded to trial, the government would have proven the following beyond a reasonable doubt. The parties agree that the following facts do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

Clean and Sober, LLC and Alcohol and Drug Recovery ("ADR") were Maryland companies that operated collectively as ADR, a provider of alcohol and drug treatment services in Forestville, Annapolis, Glen Burnie, and Waldorf, Maryland. Defendant **CHRISTOPHER WOMACK** (**"WOMACK"**) was a resident of Maryland and employed by ADR as an administrative assistant and urine technician at the Forestville facility. From at least in or about January 2011 through in or about March 2012, **WOMACK** misused his position as a urine technician to ensure that individuals who were under supervision by U.S. Probation and Pretrial Services and Services ("U.S. Probation"), through ADR, and who provided money to **WOMACK**, in exchange would not have their urine samples accurately tested and reported to U.S. Probation.

U.S. Probation was a component of the Administrative Office of the United States Courts, whose mission was to investigate and supervise persons who had been charged with federal crimes and released from detention pending further proceedings ("pretrial release"), had been convicted of crimes and released by the Bureau of Prisons after a period of incarceration ("supervised release") or paroled by the United States Parole Commission from a prison sentence, or had been placed on probation. In Maryland, these functions were performed by U.S. Probation, a component of the United States District Court for the District of Maryland. Among U.S. Probation's duties were to gather and verify information about persons who came before the United States District Court, prepare reports that the United States District Court relied upon to make release and sentencing decisions, supervise persons released to the community by the court or corrections officials, and direct persons under supervision to services to help them avoid violating the law, including substance abuse treatment, mental health treatment, medical care, training, and employment assistance.

### Federal Supervision Contract

U.S. Probation contracted with ADR to provide a variety of services, including testing the urine samples of individuals who were on pretrial release, supervised release, parole or probation ("the ADR clients") for the presence of controlled substances. In conducting the urine testing for ADR clients, ADR urine technicians were responsible for retrieving the testing containers from a secure location, escorting the ADR client to the bathroom, observing the ADR client urinate into the container, retrieving the container and then testing the urine sample for the presence of controlled substances. The ADR urine technician recorded, among other information, the date and time of the urine test, whether the ADR client completed the test, and the result. The urine technician was also required to notify U.S. Probation if the ADR client did not appear for the test or did not provide a urine sample. ADR then submitted those results to U.S. Probation, which relied upon the results to inform the Maryland district court or the Parole commission for their use in supervising individuals charged with or convicted of federal crimes.

## The Bribery Scheme

As part of his official duties, **WOMACK** was required to administer urine tests, accurately maintain records of the client's name, the date of the urine test, and the result of the test, as well as notify U.S. Probation if a client's urine tested positive for the presence of a controlled substance or if a client failed to appear or provide a urine specimen. From in or about December 2011 through March 2012, Client One was directed by U.S. Probation to appear on specific dates at the ADR facility in Forestville, Maryland, for the purpose of undergoing tests of his urine for the presence of controlled substances.

Beginning no later than January 2011, **WOMACK**, a public official, misused his position as a urine technician in exchange for cash payments from ADR clients, including Client One. For example, on January 25, 2012, **WOMACK** corruptly demanded, sought, received, and accepted $50 in return for using his official position as a urine technician to conceal from U.S. Probation the fact that Client One's urine sample was not accurately tested. **WOMACK** accepted from Client One additional $50 bribe payments in exchange for the same official acts on February 8 and 22, 2012. The Federal Bureau of Investigation recorded these bribe payments.

During the bribery scheme, numerous other federal defendants on supervised release paid $50 per test bribe payments to **WOMACK** in exchange for **WOMACK** not testing them and agreeing to not properly inform U.S. Probation. In furtherance of the bribery scheme, **WOMACK** at times was assisted by and worked with Co-conspirator 1, who was also an employee of ADR at the Forestville location. Many of the federal defendants who paid bribes had significant criminal histories and had been in fact ingesting controlled substances while on supervised release. In total, **WOMACK** accepted more than 100 individual bribe payments and received more than $10,000 in bribe payments.

I have read this statement of facts, and have carefully reviewed it with my attorney. I acknowledge that it is true and correct.

_7-5-12_  
Date

_Christopher Womack_ (signature)  
Christopher Womack

I am Christopher Womack's attorney. I have carefully reviewed the statement of facts with him.

_7-5-12_  
Date

_Marc G. Hall_ (signature)  
Marc G. Hall, Esq.